**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRAVON LEON FREEMAN, | No. 2:16-CV-0705-MCE-DMC-P |
| Plaintiff, | |
| v. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| E. LYNCH, | |
| Defendant. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's motion for summary judgment (ECF No. 68), which the undersigned concludes should be granted.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's original verified complaint. Plaintiff names the following as defendants: (1) E. Lynch, a prison nurse; (2) M. Linggi, also a prison nurse; and (3) "John Doe," the prison health care appeals coordinator.[1]

Regarding defendant Lynch, plaintiff alleges:

> On 4-7-15 at evening medical call Defendant E. Lynch came to my door. I precisely told Miss E. Lynch I was feeling out of control and that I didn't have my I.D. Nurse E. Lynch said (so what do I have to varify [sic] who you are). Inmate patient told Miss. Lynch that she has to give me my mental health medication because I hear (voices and suffer from paranoia, depression, mood swings, and sleep deprivation). . . .
>
> * * *
>
> . . .I gave defendant E. Lynch my CDCR number yet she still refused to give me my medication. E. Lynch told me she would be back but she never did come back. Due to her reckless disregard and deliberate indifference to my serious medical need that night I became extremely paranoid and my mood became so violent I attacked my cellie . . . who had to physically restrain me. Which during this time I (<u>BLACK OUT</u>) and due to that restraint I could've had a severe manic attack and died. The following morning 4-8-15 when I came to E. Lynch refused me my medication again. All together [sic] I didn't receive my medication for a period of 34 hours. . . Defendant will claim she didn't know who I was but plaintiff asserts she knew who I was for she gave me my medication

///

---

[1] The court found the complaint appropriate for service on defendant Lynch. <u>See</u> ECF No. 7 (February 10, 2017, screening order). As to defendant "John Doe," plaintiff has not filed any amended complaint to allege the true name of this defendant.

As to defendant Linggi, plaintiff alleges: "On 6-9-15 M/ Linggi R.N. told plaintiff that defendant E. Lynch was suppose [sic] to have her medical binder with inmates [sic] cell number, picture, CDCR number, and when and how much medication a prisoner is to receive." ECF No. 1., pg. 4. Plaintiff also alleges he spoke with defendant Linggi again on 6-9-15, but does not state what that conversation was about. <u>See id.</u> at 5. The court determined plaintiff failed to state a cognizable claim against defendant Linggi. <u>See</u> ECF No. 7. The court stated:

> Plaintiff's allegations with respect to defendant Linggi do not establish any cognizable claim. Specifically, plaintiff has not shown how defendant Linggi's statement regarding defendant Lynch's "medical binder" is actionable. Additionally, plaintiff's claims of a "conspiracy" are conclusory and devoid of any specific allegations establishing a conspiracy to violate plaintiff's rights.

<u>Id.</u> at 2.

The court recommends the District Judge adopt this finding and dismiss defendant Linggi for failure to state a claim.

many time's [sic] before. . . . Defendant E. Lynch was made aware of the situation and she failed to respond properly. . . .

ECF No. 1, pgs. 4-5 (underlining in original).

For relief, plaintiff seeks a court order requiring defendant Lynch to "work's [sic] on a different yard." Id. at 4. Plaintiff also seeks monetary damages. See id.

Plaintiff's allegations regarding exhaustion of administrative remedies are somewhat contradictory.[2] On this court's form complaint, plaintiff alleges a grievance process was available to him, he filed a grievance concerning the facts alleged, and the grievance process had been completed. See ECF No. 1, pg. 3. Plaintiff also provides the following narrative description of his efforts to exhaust administrative remedies:

. . .After I filed another 602 [inmate appeal] health care appeal's [sic] and I sent a letter out requesting about both 602's on 8-30-15 stating they never got another 602 and the original was sent back on 6-17-15. There is no appeal remedie [sic] available. . . .

Id. at 5.

## II.  THE PARTIES' EVIDENCE

A.    **Defendant's Evidence**

Defendant Lynch's motion for summary judgment is supported by her separate statement of undisputed facts, see ECF No. 68-3, as well as the following declarations and attached exhibits:  defendant's counsel, D. Lee, see ECF No. 68-4; defendant E. Lynch, see ECF No. 68-5; Chief Medical Officer at Kern Valley State Prison, S. Lopez, see ECF No. 68-6; Chief of the Health Care Correspondence and Appeals Branch, S. Gates, see ECF No. 68-7.  Defendant Lynch has also lodged with the court the transcript of plaintiff's deposition taken on February 26, 2019.  See ECF No. 69 (notice of lodging transcript).

/ / /

/ / /

---

[2]      These allegations are relevant because defendant Lynch argues plaintiff failed to exhaust his administrative remedies prior to filing suit.

According to defendant, the following facts related to plaintiff's claim that defendant Lynch is liable for failing to dispense medication are undisputed:

1. Plaintiff's claim is limited to the failure to dispense medication on April 7, 2015 (Complaint, pg. 5).

2. At all times relevant to the complaint, plaintiff was an inmate housed at California State Prison, Sacramento (CSP-Sac), and received medications to manage impulsivity and assist with a sleeping problem (Complaint, pg. 1; Lee Declaration, Exhibit A; plaintiff's deposition, 13:19-14:10).

3. At all times relevant to the complaint, defendant Lynch was a "floater" licensed vocational nurse at CSP-Sac, moving from facility to facility (Complaint, pg. 3; Lynch Declaration, ¶ 1).

4. On April 7, 2015, defendant Lynch made her evening rounds to dispense medication in plaintiff's facility (Plaintiff's Deposition, 18:1; Lynch Declaration, ¶ 5).

5. Plaintiff did not have his identification to present to defendant Lynch during the pill call (Plaintiff's deposition, 22:15-17; Lynch Declaration, ¶ 5).

6. Institutional policy requires that an inmate's identification be checked prior to dispensing medication (Lynch Declaration, ¶ 3).

7. Plaintiff did not receive his medication on April 7, 2015, as a result of his inability to produce identification (Lynch Declaration, ¶ 5).

See ECF No. 68-3 (defendant's separate statement of undisputed fact).

Defendant Lynch also contends the following facts relating to exhaustion are undisputed:

1. Between April 7, 2015, and the date the complaint was filed, plaintiff submitted two inmate grievances: (1) No. SAC-SC-15001254; and (2) No. SAC-SC-15001510 (Gates Declaration, ¶ 8).

2. Grievance No. SAC-SC-15001254, submitted on April 14, 2015, contained allegations against defendant Lynch related to the pill call on April 7, 2015 (Gates Declaration, Exhibit B).

3. Grievance No. SAC-SC-15001254 was not adjudicated at the third level of review (Gates Declaration, Exhibit B).

4. Grievance No. SAC-SC-15001510, submitted on December 20, 2015, relates to allegations that a non-party nurse was disrespectful to plaintiff on December 18, 2015 (Gates Declaration, Exhibit C).

/ / /

5.     Plaintiff did not process a relevant grievance concerning defendant Lynch through the third level of review (Gates Declaration, Exhibit C; plaintiff's deposition, 58:21-25).

See ECF No. 68-3 (defendant's separate statement of undisputed fact).

Finally, in support of her argument that plaintiff's request for injunctive relief contained in the complaint is moot because plaintiff has been transferred to a different prison, defendant Lynch states it is undisputed that plaintiff is currently housed at Kern Valley State Prison (KVSP) See id. (citing plaintiff notice of change of address at ECF No. 57).

**B.     Plaintiff's Evidence**

Attached to plaintiff's opposition brief are Exhibits A-E, as described below:

Exhibit A      The first page of plaintiff's Exhibit A consists of a May 18, 2015, rejection of plaintiff's inmate appeal, No. SAC-HC-15030879, by the California Correctional Health Care Services.  The grievance was procedurally rejected for "excessive verbiage or documentation."   Plaintiff was instructed to re-submit a revised grievance within 30 days.

The remainder of Exhibit A consists of an inmate grievance submitted on April 14, 2015, with a notation that it was rejected at the first level on May 18, 2015.

Exhibit B      The first two pages of Exhibit B consist of an inmate grievance submitted on May 7, 2015.  The next two pages consist of a June 15, 2015, first-level response to this grievance, which was assigned No. SAC-HC-15030924.  The grievance was partially granted and partially denied in that the "medication violation" was "addressed," but prison officials did not grant plaintiff's request that defendant Linggi be retrained.

The next two pages of Exhibit B consist of another copy of the May 7, 2015, grievance.  This copy indicates the grievance was "accepted" by the institution and assigned on June 25, 2015.  The document also indicates the matter was closed on June 17, 2015.

The next page of Exhibit B is an October 1, 2015, notice of cancellation of plaintiff's grievance, No. SAC-HC-15030924, as untimely.

The final two pages of Exhibit B consist of an inmate grievance, apparently concerning the cancellation of the prior grievance, submitted on September 16, 2015.

/ / /

/ / /

5

| | |
|---|---|
| Exhibit C | This exhibit consists of a one-page memorandum determination of staff complaint/grievance, No. SAC-SC-15001254. The memorandum concludes the grievance does not qualify as a staff complaint. |
| Exhibit D | Plaintiff provides a two-page document, entitled "Statewide Psychotropic Medication Consent Form," dated March 26, 2015, in which plaintiff consents to receiving various medications. |
| Exhibit E | This document is a one-page form, entitled "MAR Documentation, indicating defendant Lynch recorded that plaintiff had refused medication on April 7, 2015, "after requesting to see his I.D." |

See ECF No. 75, pgs. 17-41.

Also included with plaintiff's brief is the following: "Ex Par Te [sic] Motion Letter: With Exhibits Attached to Help Courts [sic] Decision with Defendants [sic] Motion for Summary Judgment." See ECF No. 75, pgs. 44-58. In his letter, plaintiff states:

> To: Mr. Dennis M. Cota as this letter in ex par te form lands in your chambers I'm respectfully requesting that you. . .take judicial notice and that these exhibits are only to be seen between plaintiff and the overseers of the arena of civil law & or litigation! These documents will surely let you see that these documents hold more weigh to what plaintiff has been stating about the defendant and her representatives. . . .

Id. at 44.

With his letter, plaintiff provides the declarations of inmates D. McCoy (H-67575), K.L. Anderson (K-08881), C. Jones (J-72309), and D. Florence (H-42660), as well as an August 5, 2015, 602 inmate appeal relating to plaintiff's allegations against defendant Lynch. See id.

Other evidence submitted by plaintiff and which the court has considered consists of plaintiff's verified complaint. See ECF No. 1.

### III. STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The

standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

/ / /

7

1        In resolving the summary judgment motion, the court examines the pleadings,

2    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

3    See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

4    477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

5    court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

6    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

8    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

9    1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

10   judge, not whether there is literally no evidence, but whether there is any upon which a jury could

11   properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

12   imposed." Anderson, 477 U.S. at 251.

13

14                                    **IV.  DISCUSSION**

15        In her motion for summary judgment, defendant Lynch argues she is entitled to

16   judgment as a matter of law because the undisputed evidence shows: (1) plaintiff failed to exhaust

17   his prison remedies prior to filing the action; (2) defendant was not deliberately indifferent;

18   (3) defendant is entitled to qualified immunity; and (4) plaintiff's request for injunctive relief is

19   moot.

20        **A.        Exhaustion**

21        Prisoners seeking relief under § 1983 must exhaust all available administrative

22   remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

23   regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

24   Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

25   the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

26   while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

27   Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and

28   held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in first instance. See Albino v. Baca, 697 F.3d 1023 (9th Cir. 2012). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted. See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's

departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).

Defendant argues:

> From April 7, 2015 to the date Plaintiff filed the complaint (April 4, 2016), Plaintiff submitted, and the Health Care Correspondence Appeals Branch processed two appeals: (1) SAC-SC-15001254 and (2) SAC-SC-15001510. (DUF 11.) Log number SAC-SC-15001254 was submitted on April 14, 2015, and contained allegations against Defendant Lynch relating to an April 7, 2015 pill-call incident. (DUF 13.) The grievance was classified as a non-staff complaint, and processed under log number SAC-HC-15030879. (Gates Decl., Exs. B, D.) Log number SAC-HC-15030879 was rejected (Gates Decl., Ex. D) and was not adjudicated at the third level of review. (DUF 14.)
> Plaintiff also submitted grievance number SAC-SC-15001510 which contended that a non-defendant nurse was disrespectful to Plaintiff on December 18, 2015. (DUF 16.) This grievance also was not adjudicated at the third level of review. (DUF 17.)
> Plaintiff did not process a relevant grievance regarding Defendant Lynch or the events of April 7, 2015 through the third level of review prior to April 4, 2016. (DUF 18.)

> * * *

> Plaintiff claims that Defendant Lynch was deliberately indifferent to his mental health care needs when she failed to dispense his medication on April 7, 2015. (ECF No. 1 at 5.) But, between April 7, 2015 and April 4, 2016 (the relevant timeframe), the undisputed facts demonstrate that Plaintiff only submitted two appeals for review. (DUF 11.) And, neither of these grievances were processed through the third level of review. (DUF 18.)

> * * *

> Appeal log number SAC-SC-15001254 was submitted on April 14, 2015 and contained pill distribution claims against Nurse Lynch relating to an April 7, 2015 pill-call incident. (DUF 12, 13.) This grievance was processed at the second level of review on May 5, 2015 and determined to not be a staff complaint (Gates Decl., Ex. A). Log number SAC-SC-15001254 was reassigned as SAC-HC-15030879 and was screened out at the first level of review on May 18, 2015 for excessive verbiage or documentation. (Gates Decl., Ex. A.) The appeal was returned to Plaintiff with instructions for how to fix the deficiencies, but he failed to pursue these claims to the third level of review. (Gates Decl. Exs. A, D.) Therefore, Plaintiff failed to comply with the administrative exhaustion

requirement with respect to his claim against Defendant Lynch. She is entitled to judgment.

* * *

Plaintiff also submitted appeal log number SAC-SC-15001510 in the relevant timeframe. (DUF 15.) However, this grievance contained allegations stating a non-defendant nurse who was disrespectful to Plaintiff on December 18, 2015. (DUF 16.) This grievance is irrelevant to the April 7, 2015 allegations against Defendant Lynch and could not have been sufficient to exhaust administrative remedies for this lawsuit.

Based on the foregoing, Plaintiff failed to fully exhaust his claim against Defendant Lynch. His claims should therefore be dismissed.

Defendant's evidence regarding exhaustion consists entirely of the declaration of S. Gates, the Chief of the Health Care Correspondence and Appeals Branch (HCCAB), and exhibits A through G attached thereto, as well as plaintiff's deposition.

At plaintiff's deposition, the following exchange occurred regarding exhaustion of plaintiff's claims against defendant Lynch:

Q:      . . .My concern still is that you never received a response from the third level with respect to your issue against Ms. Lynch.

A:      I see what you're saying, yes sir.

Q:      Is that your understanding as well, is no response from the third level has been issued regarding this issue of Ms. Lynch?

A:      This situation is just – is pretty much – it's frustrating to me.  But to answer, yeah.

Plaintiff's Deposition, 58:16-25.

This testimony is not dispositive in that plaintiff merely reflects his understanding that no third-level grievance response had been issued.  He does not admit, as a matter of fact, that he did not submit a third-level grievance

This leaves the Gates declaration and exhibits as the only evidence which could support defendant's position on exhaustion.  Gates states in relevant part:

7.      At the request of the Attorney General's Office, a review of the inmate health care appeal records in the HCARTS database was conducted for inmate Travon Freeman, CDCR No. (G-36842).  Attached to my declaration as Exhibit A, is a true and correct copy of the HCARTS health care appeal history printout for this inmate.  I have reviewed Freeman's health care appeal history, and based on that review, I can confirm the following:

11

8.     Throughout the relevant timeframe (April 7, 2015 to April 4, 2016), Freeman submitted, and the following appeals were processed: (1) SAC-SC-15001254 attached as Exhibit B; and (2) SAC-SC-15001510 attached as Exhibit C.  In addition, Freeman submitted the following appeals that were screened out or rejected at their corresponding levels of review: (1) SAC-HC-15030879 attached as Exhibit D (SAC-HC-15030879 was initially processed as a staff complaint under the log number SAC-SC-15001254.  Upon the determination that it did not meet the criteria for a staff complaint, the appeal was processed under log number SAC-HC-15030879).  Additionally, the following appeals were screened: (2) SAC-SC-15001290 attached as Exhibit E; (3) SAC-HC-15030924 attached as Exhibit F; and (4) SAC-HC-15031799 attached as Exhibit G.

ECF No. 68-7 (Gates Declaration), pg. 3, ¶¶ 7-8.

The following is a summary of the exhibits attached to the Gates declaration:

| | |
|---|---|
| Exhibit A | This document shows that, after April 7, 2015, plaintiff submitted the following grievances related to the denial of medication by defendant Lynch: Log No. SAC-SC-15001254, Log No. SAC-HC-15030879, Log No. SAC-SC-15001290, Log No. SAC-SC-15001510 and Log No. SAC-HC-15030924.  See ECF No. 68-7 (Gates Declaration), Exhibit A.  None of these grievances was processed through to the third level of review.  See id. |
| Exhibit B | This exhibit consists of documents related to Log No. SAC-SC-15001254 and reflects that the matter was not treated as a staff complaint and would be processed as "a routine appeal."  Id. at Exhibit B.  The determination, made on April 21, 2015, that this grievance was not a staff complaint indicates: "[A]ccept, reject or cancel in accordance with CCR Title 15, Section 3084.5."  Id.  Gates states the appeal was "processed."  ECF No. 68-7 Gates Declaration), pg. 3, ¶ 7.  Gates further states Log No. SAC-HC-15030879 was "initially processed as a staff complaint under the log number SAC-SC-15001254."  Id.  Thus, the evidence shows Log Nos. SAC-SC-15001254 and SAC-HC-15030879 are the same grievance. |
| Exhibit C | This exhibit consists of documents related to Log No. SAC-SC-15001510.  See id. at Exhibit C.  According to the second level response included with Exhibit C, Log No. SAC-SC-15001510 concerned plaintiff's allegations of misconduct by nurses L. Kelly and Reyes.  See id.  Because this grievance does not concern defendant Lynch, it is not relevant in the current case. |
| Exhibit D | This exhibit consists of documents related to Log No. SAC-HC-15030879.  See id. at Exhibit D.  The grievance was rejected on May 18, 2015, at the first level because it contained "excess verbiage or documentation."  Id.; see also id. at Exhibit A (reflecting appeal level of rejection). Plaintiff was instructed to resubmit the grievance within 30 |

| | | |
|---|---|---|
| 1 | | days.  See ECF No. 68-7 (Gates Declaration), Exhibit D. |
| 2 | Exhibit E | This exhibit consists of documents related to Log No. SAC-SC-15001290, which was rejected on May 21, 2015, due to |
| 3 | | "excessive filings."  Id. at Exhibit E.  In particular, the rejection notice states: "The inmate or parolee has exceeded |
| 4 | | the allowable number of appeals filed in a 14 calendar day period pursuant to the provisions of subjection 3084.1(f)." |
| 5 | | Id.  The notice states Log No. SAC-SC-15001290 was received on May 20, 2015, less than 14 days after receipt of |
| 6 | | Log No. SAC-HC-15030924 on May 14, 2015.  See id. |
| 7 | Exhibit F | This exhibit consists of documents related to Log No. SAC-HC-15030924.  See id. at Exhibit F.  This grievance was |
| 8 | | cancelled on October 1, 2015, as having been submitted for second-level review beyond applicable time limits |
| 9 | | following a first-level determination.  See id.; see also id. at Exhibit A (reflecting appeal level of cancellation). |
| 10 | | |
| 11 | Exhibit G | This exhibit consists of documents related to Log No. SAC-HC-15031799, which was rejected at the first level of review because it contained multiple unrelated issues that |
| 12 | | could not be addressed in a single grievance.  See ECF No. 68-7 (Gates Declaration), Exhibit G.  Plaintiff was |
| 13 | | instructed to resubmit the grievance within 30 days.  See id. |

This evidence shows that plaintiff's various grievances concerning defendant Lynch and the events of April 7-8, 2015, when not treated as a staff complaint, were rejected or cancelled at either the first or second levels of review for procedural reasons.  The evidence also shows that plaintiff did not pursue any of the relevant grievances through to the third and final level of administrative review.  Defendant Lynch has, therefore, met her burden on summary judgment of identifying the evidence she contends demonstrates the non-existence of any genuine issue of material fact relating to plaintiff's failure to exhaust administrative remedies prior to filing suit.

The court has examined plaintiff's evidence offered in opposition to defendant Lynch's motion for summary judgment, specifically Exhibits A through E attached to this opposition brief as well as the additional inmate declarations improperly submitted for ex parte review.[3]  Plaintiff's Exhibits A, B, and C are copies of the relevant grievances and are duplicative of the evidence provided by defendant Lynch.  Exhibits D and E are not relevant to the issue of

---

[3]    As to the inmate declarations, the court again notes that, while plaintiff appears to have intended the evidence be reviewed ex parte, his filing nonetheless appears on the public docket.

exhaustion. The inmate declarations, to the extent they are properly before the court and where they discuss facts related to exhaustion, merely confirm that plaintiff in fact submitted several grievances concerning the events of April 7-8, 2015.

Because defendant's evidence concerning exhaustion is not contradicted by any of the evidence submitted by plaintiff, and because defendant's evidence establishes plaintiff failed to perfect any grievance through to the third and final level of administrative review, the court concludes summary judgment in defendant's favor is appropriate based on plaintiff's failure to exhaust.[4]

## B. Eighth Amendment Claim

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

/ / /

/ / /

/ / /

---

[4] Though this finding is dispositive of the entire matter, the court nonetheless addresses defendant's remaining arguments.

14

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Regarding the merits of plaintiff's Eighth Amendment claim, defendant Lynch argues the undisputed evidence shows the following: (1) plaintiff's claim is limited to the denial of medication on April 7, 2015; (2) defendant acted out of precaution as required by policy and not out a desire to inflict pain; and (3) plaintiff cannot prevail on any claim of delay in providing medication because plaintiff suffered no physical injury.

/ / /

/ / /

1               1.     <u>Scope of Plaintiff's Eighth Amendment Claim</u>

2               According to defendant Lynch, plaintiff's claim is limited to the failure to receive

3 medication on April 7, 2015. <u>See</u> ECF No. 68-3 (statement of undisputed facts). In support,

4 defendant cites to plaintiff's complaint. Plaintiff's complaint, however, refers to the denial of

5 medication on both April 7, 2015, and the following day, April 8, 2015. <u>See</u> ECF No. 1, pg. 5.

6 Specifically, after describing the denial of medication on April 7, 2015, plaintiff alleges: "The

7 following morning 4-8-15 when I came to E. Lynch refused me my medication again." <u>Id.</u> On

8 this record, the court does not agree with defendant that plaintiff's complaint is limited to the

9 events of April 7, 2015.

10               In support of her motion for summary judgment, defendant has lodged the

11 transcript of plaintiff's deposition, taken on February 26, 2019. <u>See</u> ECF No. 69 (notice of

12 lodging transcript). Regarding his allegation that defendant Lynch also denied him medication on

13 the morning of April 8, 2015, plaintiff testified:

14               Q:     Did you get medication the following morning?

15               A:     The following morning, no.

16                      * * *
              Q:     Okay. Would it have been Nurse Lynch that came around
17 to issue the first medication, also?

18               A:     No. . . .

19                      * * *

20               Q:     Right.

21               A:     Then, like I say, first watch she [defendant Lynch] pretty
much either went home or worked overtime, or whatever it is she might
22 have went and did, and then the next morning at 6:00 would be second
watch. She double back. She worked that morning, she did the same
23 thing again. . . .

24              Plaintiff's Deposition, 31:24-33:7.

25 Plaintiff then offered his speculation as to defendant's motive. <u>See id,</u> at 33:9-34:10.

26 / / /

27 / / /

28 / / /

Given this testimony – which defendant did not further develop during plaintiff's deposition or discuss in her motion for summary judgment – as well as the allegations contained in the verified complaint, the court concludes plaintiff's Eighth Amendment claim includes the allege denial of medication by defendant Lynch on the morning of April 8, 2015.  Defendant has not met her burden of establishing the undisputed evidence limits plaintiff's claim to the events of April 7, 2015.

2.      Defendant's State of Mind

Defendant argues:

> Here, there are no facts to suggest that Defendant Lynch disregarded a known medical need. Indeed, Defendant Lynch pushed her cart to Plaintiff's cell to dispense his medication, but Plaintiff did not have his identification to receive his medication. (DUF 6, 7.) Policy required Defendant Lynch to conduct the identification check prior to dispensing medications (DUF 8), because of the propensity for double-celled high security inmates to ingest medications not meant for them (Lynch Decl. ¶ 3). Indeed, Plaintiff agrees that "prison is known for them [sic] type of activities." (Pl.'s Depo. at 21:19-22:1.) It simply would have been irresponsible for a floating nurse with no relationship to the Plaintiff to dispense medications to an inmate who lost his identification out on the yard that day (Pl.'s Depo. at 30:11-12) and could not confirm his identity. Defendant Lynch merely took the necessary precaution with dispensing medication, and was not deliberately indifferent to Plaintiff's condition.

Defendant's argument is persuasive and supported by the undisputed evidence.  In her declaration offered in support of summary judgment, defendant Lynch states in relevant part as follows:

> 3.      Under California Correctional Healthcare Services (CCHCS) policy, I am required to verify an inmate's verification before dispensing medication.  As a floater, I would not be able to recall the identities and corresponding medications for each inmate that I visited. Therefore, viewing identification was paramount to make sure that an inmate was receiving the proper medication and in the proper dosage. . . . Having the inmate provide identification gives me an opportunity to compare the picture against the picture provided in the medication binder. . . .

> 4.      Inmates are given advance notice of the policy regarding identification, and are frequently reminded by custody staff about this obligation.  Nonetheless, when inmates fail to comply, I document their dissatisfaction in a MARS record to memorialize the incident. . . .

/ / /

> 5.     On April 7, 2015, during third watch, I pushed the medication cart to Freeman's cell with the medical binder. I asked Freeman for his identification. . . . Freemen then identified himself and stated that he did not want his medication. Freeman also indicated that he did not have his identification. . . .

ECF No. 68-5 (Lynch Declaration), pg. 2, ¶¶ 3-5.

Plaintiff has offered no evidence regarding defendant Lynch's state of mind when plaintiff was not provided medication on April 7-8, 2015. Indeed, plaintiff admitted at his deposition that he did not have his identification because he had left it on the yard. See Plaintiff's Deposition, 22:15-23.

To prevail, plaintiff must prove defendant Lynch had a sufficiently culpable state of mind when she denied plaintiff his medication. Plaintiff cannot do so here because the undisputed evidence shows that defendant Lynch acted in accordance with policy designed to ensure proper dispensation of medication and not out of any personal animus towards plaintiff or for the purpose of causing plaintiff pain and suffering.

### 3.     Delay in Providing Medication

Plaintiff alleges he was denied medication for a period of 34 hours. See ECF No. 1, pg. 5. Defendant Lynch argues plaintiff cannot prevail because he has not alleged a physical injury. According to defendant:

> Here, Plaintiff claims that the deprivation resulted in him blacking out and having an incident with his cellmate. (ECF No. 1 at 5.) However, this description identifies no physical injury to the Plaintiff, nor can he recover for mental distress (see 42 USCA § 1997(e)). Furthermore, Plaintiff identifies his mental injuries hypothetically by stating "[i] could've had a severe manic [sic] attack and died." (ECF No. 1 at 5.) But again, Plaintiff does not indicate that any of these mental-health conditions arose. Lastly, Plaintiff's deposition testimony undermines any claim that Plaintiff presented a threat to his cellmate as he states "…[i] didn't think I was a threat to him." (Pl.'s Depo at 27:1-2.) Simply stated, there are no discernible physical injuries to Plaintiff that resulted from Defendant Lynch's alleged failure to administer Plaintiff his medication. For this reason, Defendant Lynch is entitled to summary judgment on Plaintiff's deliberate-indifference claim.
>
>                         *  *  *

/ / /

/ / /

. . .By the biggest measure, Plaintiff in this case indicates that he went approximately 34 hours without his medication. (Pl.'s Depo. at 36:21-23.) And, as stated above, Plaintiff is unable to articulate any harm relating to this alleged deprivation. This simply is not a significant enough deprivation, to be a violation of the Eight Amendment. Defendant Lynch is entitled to summary judgment on Plaintiff's claim.

Defendant's argument is persuasive because, given the lack of any allegation of actual injury suffered as a result of the 34-hour delay in receiving medication, a claim based on delay is not part of this action.

## C.    Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right.  See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the

19

right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

        The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. See Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

        Defendant argues.

> As discussed above, Plaintiff cannot meet his burden in demonstrating an Eighth Amendment violation against Defendant Lynch. This determination alone entitles her to qualified immunity. Alternatively, a review of the legal landscape indicates that there was neither a consensus nor controlling precedent that would instruct Defendant Lynch that her actions were unlawful.
>
> Plaintiff admits that he did not have his identification at the time of pill call on April 7, 2015. (DUF 7.) And, pursuant to CCHCS policy and security concerns which the parties agree on (DUF 8, 9; Pl.'s Depo. at 21:19-22:1), Nurse Lynch was unable to dispense medications to Plaintiff. Lastly, Plaintiff gave no reason to believe he was subject to an immediate threat. (Pl.'s Depo at 27:1-2.) Thus, there was no reason for Nurse Lynch to defy CDCR policy. A review of the legal landscape as of 2017 reveals that no decisional authority or consensus would have altered Nurse Lynch to the alleged impropriety of her medical judgment.
>
> For example, in *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), the court denied defendants' assertion of qualified immunity because there was evidence to support the decision was due to personal animosity rather than honest medical judgment. Here, however, Plaintiff concedes that Nurse Lynch dispensed his medications at each of their prior interactions (Pl.'s Depo. at 28:22-29:6), and that he did not conceive of a

20

reason that the prior interactions would have motivated Nurse Lynch to not dispense Plaintiff's medications on April 7, 2015 (Pl.'s Depo. at 24:14-23). Based on the above, there is nothing in the record to support the conclusion that Nurse Lynch declined to dispense Plaintiff's medication due to animus. Rather, it seems that Nurse Lynch complied with medical policy. She should be entitled to qualified immunity.

Qualified immunity shields government officials who, in the face of clearly established law, acted reasonably but nonetheless violated some constitutional right. As discussed above, the undisputed evidence shows defendant Lynch did not violate plaintiff's rights. Therefore, qualified immunity is not an issue in this case. And even if the court concluded defendant Lynch violated a clearly established right, she would be entitled to qualified immunity because the undisputed evidence shows defendant Lynch acted reasonably by following applicable policies related to dispensing medication to inmates.

### D. **Injunctive Relief**

Plaintiff seeks injunctive relief in the form of an order mandating that defendant Lynch be assigned to a "different yard" at CSP-Sac. ECF No. 1, pgs. 2-4. The record reflects that plaintiff was transferred to KVSP subsequent to the dates relevant to the complaint. See ECF No. 57 (notice of change of address). Defendant argues this fact renders plaintiff's request for injunctive relief moot. Given the court's findings defendant Linggi should be dismissed for failure to state a claim and defendant Lynch should be granted summary judgment in her favor, this action presents no case or controversy and plaintiff's request for injunctive relief is indeed moot.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# V.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendant Linggi be dismissed for failure to state a claim; and

2.      Defendant Lynch's motion for summary judgment (ECF No. 68) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 4, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE